IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PROFESSIONAL, INC. d/b/a, : | |
| PROFESSIONALS AUTO BODY, : | |
|     Plaintiff : | |
| : | |
| VS. : | NO. 3:17-cv-00185-KRG |
| : | |
| PROGRESSIVE CASUALTY, : | |
| INSURANCE COMPANY, : | |
|     Defendant : | |
| : | JURY TRIAL DEMANDED |

## NOTICE

    You have been sued in Court.  If you wish to defend against the claims set forth in the following pages, you must take action within **TWENTY (20) DAYS** after this **COMPLAINT** and **NOTICE** are served, by entering a written appearance personally or by attorney and filing in writing with the Court your defenses or objections to the claims set forth against you.  You are warned that if you fail to do so, the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the **COMPLAINT** or for any other claim or relief requested by the Plaintiff.  You may lose money or property or other rights important to you.

    **YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW.  THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.**

    **IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.**

MIDPENN LEGAL SERVICES, INC.
205 Lakemont Park Boulevard, Lakemont
Altoona, PA 16602
1-800-326-9177

Date: December 4, 2017                      Forr, Stokan, Huff, Kormanski & Naugle
                                                        __/s/ James R. Huff, II, Esq._____
                                                        By:     James R. Huff, II, Esquire
                                                                            PA I.D. # 33270
                                                                            Attorneys for Plaintiff
                                                                            1701 Fifth Avenue
                                                                            Altoona, PA   16602
                                                                            (814) 946-4316

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PROFESSIONAL, INC. d/b/a, : | |
| PROFESSIONALS AUTO BODY, : | |
|     Plaintiff : | |
| : | |
| VS. : | NO. 3:17-cv-00185-KRG |
| : | |
| : | |
| PROGRESSIVE CASUALTY, : | |
| INSURANCE COMPANY, : | |
|     Defendant : | |
| : | JURY TRIAL DEMANDED |

## AMENDED COMPLAINT

TO THE HONORABLE, THE JUDGES OF SAID COURT:

AND NOW, to wit, comes the Plaintiff, PROFESSIONAL, INC. d/b/a PROFESSIONALS AUTO BODY (hereinafter "Professionals"), individually and as assignee of the individuals identified on Exhibit A, who by and through its counsel, FORR, STOKAN, HUFF, KORMANSKI & NAUGLE, ESQUIRE, does hereby file this COMPLAINT against the above named Defendant averring as follows:

1.

Plaintiff, Professional, Inc., d/b/a Professionals Auto Body, is a corporation incorporated pursuant to the laws of the Commonwealth of Pennsylvania with a principal place of business located at 1109 Plank Road, Duncansville, Blair County, Pennsylvania.

2.

Defendant, Progressive Casualty Insurance Company, is an insurance company registered to do business with the Pennsylvania Insurance Department and is doing business in the State of Pennsylvania with an address 6300 Wilson Mills Road, Cleveland, Ohio 44143.

3.

Plaintiff, Professional, Inc., is an automobile body repair shop with locations in the Duncansville and Altoona areas.

4.

Defendant is an insurance company licensed to and actually provides automobile insurance coverage for automobile owners in the Commonwealth of Pennsylvania.

5.

In the Commonwealth of Pennsylvania, the right of the owner of a damaged automobile to choose a repair shop is preserved by Pennsylvania law at 63 P.S. §861.

6.

Individuals identified in Exhibit A either insured by Defendant or having received property damage from an individual insured by Defendant, brought their automobiles to Plaintiff's auto body repair shop for repairs that were to be covered pursuant to the respective insurance policy whether the policy was by and between the owner of the automobile or a policy with the liable third party.

7.

The automobile owners referenced herein did select Plaintiff to make repairs to their damaged automobiles and provided a written authorization to Plaintiff to perform those repairs reasonable and necessary for the vehicles to be brought back into their pre-loss condition.

8.

The identified automobile owners also executed an assignment of proceeds authorizing Plaintiff to recover any unpaid amount for services rendered and repairs made by Plaintiff pursuant to their request and authorization of each automobile owner.   A true and correct copy of the

Assignments of Proceeds are attached hereto and made a part hereof collectively as Exhibit A.

9.

Defendant made partial payments to Plaintiff for repairs to the named individuals' automobiles, but failed to make full payment for services rendered and repairs made which were reasonable and necessary to bring the vehicles back to their pre-loss condition.

10.

The unpaid balances for the reasonable and necessary repairs are $130,575.16, together with delay time costs of $550,236.13, together with administrative costs of $32,161.61, for a total amount of no less than $712,972.90.

11.

Plaintiff requested the unpaid balances from Defendant in each instance as identified in the documents in Exhibit A as "Supplement."   Despite these requests, Defendant has failed or refused to render full payment for all reasonable and necessary repairs.

12.

Due to the refusal of Defendant to make payment of the full sum due and owing to Plaintiff for services provided relative to each automobile owner, Plaintiff has been greatly damaged by the loss of income, the need to utilize additional administrative resources to obtain any payment, delay in repair cycles and the provision of parts and services for which it was never properly compensated by the various insurers.

13.

Over the time frame set forth in the documents in Exhibit A Defendant has engaged in intentional, ongoing and concerting courses of conduct in order to improperly and illegally control and depress the costs of automobile repairs, which has all been to the detriment of Plaintiff and the

substantial benefit of Defendant.

14.

Plaintiff has been put in the untenable position of having to provide all necessary repair services in order to bring each damaged vehicle back to its pre-loss condition without ever receiving full reimbursement for the labor and costs involved in making those necessary repairs, which has resulted in Plaintiff regularly making repairs without compensation and to its own financial detriment.

15.

Attached to this Complaint as Exhibit "A" are documents relating to each individual automobile owner whose cost of repairs was not fully paid by Defendant as indicated and averred in the foregoing paragraphs.

16.

For example but not by way of limitation, automobile owner Bradley Owlett, brought his 2004 Chevy Avalanche to Plaintiff for repair services in March 2015.

17.

After an inspection of the damage to the vehicle, Defendant did elect for repairs to be performed rather than to replace the vehicle as a total loss.

18.

Plaintiff utilized a licensed appraiser at its facility to review all damage, determine necessary repair procedures and prepare a repair estimate, which was then submitted to Defendant.

19.

Mr. Owlett executed an Assignment of Proceeds, Authorization to Handle Your Claim and Repairs form, and Damage Report Authorization, copies of which are a part of Exhibit A.

20.

Mr. Owlett elected to have his vehicle repaired to the best of Plaintiff's ability using original manufactured parts and high quality materials.

21.

Plaintiff sent notice to Defendant that Mr. Owlett brought his vehicle to Plaintiff's repair facility and the charges which would accrue for delays on the part of Defendant.

22.

Plaintiff notified Defendant of the original estimate and supplemental charges.

23.

Defendant made partial payment but did not pay Plaintiff in full for the reasonable and necessary repairs.

24.

Despite requests for the full reimbursement of the parts and labor invested which were necessary and reasonable to bring Mr. Owlett's vehicle to its pre-loss condition, Plaintiff remains unpaid in the amount of $847.28 for the parts and labor, together with delay time costs in the amount of $6,965.81, together with Administrative costs in the amount of $434.00.

25.

Mr. Owlett is just one example of such practices by Defendant.   A complete list of the instances giving rise to this Complaint is attached as Exhibit A.

**COUNT I – QUANTUM MERUIT/UNJUST ENRICHMENT**

26.

Plaintiff hereby incorporates by reference all of the foregoing paragraphs by reference as if again fully set forth.

27.

Plaintiff is in the business of repairing damaged automobiles to their pre-loss condition.

28.

Relative to each transaction identified in Exhibit A Plaintiff was contacted by the customer and then, pursuant to the customer's authorization, expended significant costs in the sense of labor and materials to the benefit of Defendant and Defendant's claimant or insured.

29.

In each of the transactions identified in Exhibit A, the Defendant is required by either contract or tort law to provide payment on behalf of each claimant for all repairs and services rendered.

30.

Plaintiff made the reasonable and necessary repairs to the vehicles identified in Exhibit A to bring the vehicles as close to their pre-loss condition as possible and in compliance with the standards requested by the vehicle owners despite not being fully compensated by Defendant.

31.

In doing so, Plaintiff conferred a benefit on Defendant in that Defendant's customers were satisfied with the repairs, did not take action against Defendant for insufficient repairs, and remained customers of Defendant.

32.

Moreover, Defendant has received a benefit of having the repairs it was required to pay for completed without having fully compensated Plaintiff for said repairs.

33.

While Plaintiff has provided full and complete information with regard to each necessary repair and transaction, Defendant has repeatedly failed and/or refused to provide full

payment for all of the services and materials rendered to each automobile owner.

34.

Defendant's refusal to fully reimburse Plaintiff for the repairs provided has unjustly enriched each Defendant in each transaction by the sum of the difference between what is due to Plaintiff and what Defendant independently determined and unilaterally determined it would.

35.

Defendant is aware that a significant benefit has been received by Defendant from its refusal to pay the full amount for repair of each vehicle, and the bottom line of Defendant has been increased by each refusal to pay the full sum due and owing for the proper repairs that were completed for each vehicle.

36.

As a result of the actions, failures and/or omissions of Defendant, Plaintiff suffered additional damages in the form of delay time cost and administrative costs for each instance.

37.

Said delay time costs and administrative costs were part of and required in the reasonable and necessary repairs to each vehicle to restore the vehicle to its pre-loss condition and to the satisfaction of the owner of the vehicle.

38.

Defendants continue to retain all benefits despite objection of the Plaintiff.

**WHEREFORE,** Plaintiff respectfully requests this Honorable enter an Order requiring Defendant to make the Plaintiff whole for all labor and materials expended that have benefited Defendant which sum would be approximately $130,575.16, together with the delay time costs of $550,236.13, together with the administrative costs of $32,161.61 for a total amount of no less

than $712,972.90, and to enter any further Order this Honorable Court may deem just and proper to compensate Plaintiff for benefits wrongfully retained by Defendant.

## COUNT II – BREACH OF CONTRACT

39.

Plaintiff hereby incorporates all of the foregoing paragraphs by reference as if each paragraph was again fully set forth.

40.

Defendant had a contractual duty to pay for repairs to the vehicles identified in Exhibit A through the insurance policies Defendant entered into either directly with the individuals identified in Exhibit A or the persons who caused damage to those individuals' vehicles.  A true and correct copy of a sample of Defendant's insurance policies are attached hereto and made a part hereof as Exhibit B.

41.

Under each policy, a voluntary alternative dispute resolution of requesting an independent appraiser was offered; however neither Plaintiff nor Defendant opted to utilize that option.

42.

In the policies, Defendant agrees to pay any and all damages for which the insured becomes liable caused by an accident.

43.

In each of the transactions identified in Exhibit A, Defendant has represented that it did have an obligation to pay and did partially perform its duty to make payment by making a partial payment relative to all repairs rendered.

44.

In each of the instances identified in Exhibit A, Defendant has failed/refused to pay the full amount due to Plaintiff as each amount due is what was required in order to fully and properly make the necessary and reasonable repairs to the vehicle.

45.

By making partial payments to Plaintiff for the work performed, Defendant acknowledged a duty to pay Plaintiff for repairs to the vehicles owned by the individuals identified in Exhibit A.

46.

Plaintiff, by way of the Assignments identified in Exhibit A, is stepping into the customer's shoes to pursue damages under the contractual obligations Defendant owed to the individuals identified in Exhibit A.

47.

Defendant has failed to make payment in full of its obligation to Plaintiff under the terms of the contract.

48.

Failure and/or refusal of Defendant to pay the full and complete costs of repairs constitute a breach of the agreement whereby Plaintiff completed repairs to each vehicle with the understanding that payment in full would be received.

49.

As a result of the actions, failures and/or omissions of Defendant, Plaintiff suffered additional damages in the form of delay time cost and administrative costs for each instance.

50.

Said delay time costs and administrative costs were part of and required in the reasonable and necessary repairs to each vehicle to restore the vehicle to its pre-loss condition and to the satisfaction of the owner of the vehicle.

51.

By Defendant's failure and/or refusal to make payment in full, Plaintiff has now been damaged in the sum of $130,575.16, together with the delay time costs of $550,236.13, together with the administrative costs of $32,161.61 for a total amount of no less than $712,972.90.

**WHEREFORE**, Plaintiff respectfully requests this Honorable Court enter an Order requiring Defendant to pay damages in the amount of $130,575.16, together with the delay time costs of $550,236.13, together with the administrative costs of $32,161.61 for a total amount of no less than $712,972.90 and to otherwise enter an Order providing for any and all such other relief that this Honorable Court may deem just and proper.

### **COUNT III – BAD FAITH**

52.

Plaintiff hereby incorporates all of the foregoing paragraphs by reference as if each paragraph was again fully set forth.

53.

Plaintiff received Assignment of Proceeds from each individual identified in Exhibit A.

54.

The third paragraph of the Assignment of Proceeds states "In consideration of Professionals Auto Body's agreement to make all repairs to Customer's damaged vehicle, Customer desires to and does hereby assign to Professionals Auto Body any and all right, claim or other interest

in any proceeds necessary to pay for repairs to Customer's vehicle as stated in the attached contract for repairs."

55.

Further, the first paragraph on page two of the Assignment of Proceeds states "This agreement does not in any way diminish the right of Professionals Auto Body to pursue payment for the repairs it has made to Customer's (Assignor's) vehicle as stated in the contract for repairs."

56.

The entitlement to pursue damages for bad faith is assignable in Pennsylvania.  *See Allstate Property and Casualty Insurance Company v. Wolfe*, 105 A.3d 1181, 1188 (2014).

57.

By virtue of the Assignments of Proceeds and applicable law, Plaintiff has standing to pursue an action for bad faith against Defendant.

58.

Defendant had a requirement under the Pennsylvania Motor Vehicle Physical Damage Appraiser Act and/or regulations relating to the same to have its appraisers: (1) conduct themselves in such a manner as to inspire public confidence by fair and honorable dealings; (2) approach the appraisal of damaged property without prejudice against, or favoritism toward, any party involved in order to make fair and impartial appraisals; (3) disregard any efforts on the part of others to influence their judgment in the interest of the parties involved; and (4) prepare independent appraisals of damage.

59.

Moreover, the Pennsylvania Motor Vehicle Physical Damage Appraiser Act prohibits an appraiser or his employer from requiring that repairs be made in any specified repair shop.

60.

Defendant, by and through its appraisers, violated the requirements of the Motor Vehicle Physical Damage Appraiser Act by failing to make reasonable estimates of the damages due the vehicles identified on Exhibit A.

61.

Defendant, by and through its appraisers and/or adjusters, further violated the requirements of the Motor Vehicle Physical Damage Appraiser Act by attempting to influence Plaintiff to utilize parts and/or services which were inferior to the standards Plaintiff is known for and as requested by the individuals identified in Exhibit A.

62.

Additionally, Defendant had a contractual duty through the insurance policies it had either directly with the individuals identified on Exhibit A or with individuals causing damage to the individuals identified on Exhibit A, to pay all reasonable and necessary costs to bring the vehicles back to their pre-loss condition.

63.

Defendant has failed or refused to pay the full reasonable and necessary costs for the repair of the vehicles set forth on Exhibit A.

64.

Defendant did not have a reasonable basis for failure to make full payment as the costs set forth by Plaintiff are reasonable and necessary to return the vehicles to as close to their pre-loss condition as possible and according to the standards the vehicle owners requested.

65.

Defendant knew or recklessly disregarded its lack of reasonable basis in refusing to pay

in full the reasonable and necessary costs to return the vehicles to as close to their pre-loss condition as possible and according to the standards the vehicle owners requested.

66.

Defendant, by and through its appraisers and/or adjusters, failed to act with diligence in assessing the damages to the vehicles identified in Exhibit A.

67.

Defendant, by and through its appraisers and/or adjusters, made unreasonable denials and failed to properly handle the claims in Exhibit A.

68.

Defendant is therefore liable for those bad faith remedies available to Plaintiff by virtue of 42 Pa. C.S.A. § 8371, including but not limited to attorney's fees and punitive damages.

69.

As a result of the actions, failures and/or omissions of Defendant, Plaintiff suffered additional damages in the form of delay time cost and administrative costs for each instance.

70.

Said delay time costs and administrative costs were part of and required in the reasonable and necessary repairs to each vehicle to restore the vehicle to its pre-loss condition and to the satisfaction of the owner of the vehicle.

**WHEREFORE**, Plaintiff respectfully requests this Honorable Court enter an Order finding that Defendant has acted in bad faith with regard to each of the transactions identified in Exhibit A and order payment of all attorney's fees and punitive damages and any other such relief that this Honorable Court may deem just and proper.

## COUNT IV – INTENTIONAL INTERFERENCE WITH BUSINESS

71.

Plaintiff hereby incorporates all the foregoing paragraphs by references as if each paragraph was again fully set forth.

72.

The primary element of an action for tortious interference is the existence of a contract. *See Hillis Adjustment Agency, Inc. v. Graham Co.*, 911 A.2d 1008, 1012 (Pa. Super. 2006).

73.

Plaintiff had a contract with each of the vehicle owners identified in Exhibit A to repair each to satisfaction of the owner by putting the same into its pre-loss condition and to perform all reasonable and necessary repairs to the vehicle to accomplish that directive.

74.

Pennsylvania law recognizes that tortious claims can evolve from a contractual relationship and are separate from any action on the underlying contract. *See Bruno v. Erie Insurance Co.*, 106 A.3d 48 (2014).

75.

In the insurance policies, a copy of an example of each is attached as Exhibit B, Defendant agrees to pay any and all damages for which the insured becomes liable caused by an accident.

76.

Defendant purposefully and intentionally interfered with the contractual relationship between Plaintiff and the individuals identified on Exhibit A by failing and/or refusing to pay for all reasonable and necessary repairs.

77.

Moreover, Defendant attempted to direct Plaintiff to utilize inferior parts and/or to perform inferior service, which would have prevented Plaintiff from fully performing its duties under the attached contracts.

78.

Defendant lacked privilege or justification for such interference.

79.

Despite Defendant's intentional interference, Plaintiff still completed the terms of its contract with each vehicle owner by performing all reasonable and necessary repairs to place the vehicles in their pre-loss condition.

80.

Plaintiff suffered harm in that it has not received full compensation from Defendant for the reasonable and necessary repairs to each vehicle.

81.

Plaintiff notified Defendant of the additional costs in each "Supplement" as identified in Exhibit A.

82.

Defendant's conduct has created delays in repair of each vehicle, resulting in Plaintiff's loss of business and incurrence of potential liability for the storage of each vehicle, as well as additional administrative costs.

83.

Defendant's conduct was unreasonable, intentional, extreme, outrageous, and malicious under the circumstances.

84.

As a result of the actions, failures and/or omissions of Defendant, Plaintiff suffered additional damages in the form of delay time cost and administrative costs for each instance.

85.

Said delay time costs and administrative costs were part of and required in the reasonable and necessary repairs to each vehicle to restore the vehicle to its pre-loss condition and to the satisfaction of the owner of the vehicle.

**WHEREFORE,** Plaintiff respectfully requests this Honorable enter an Order compensating Plaintiff for the loss from Defendant's interference in its business which sum would be approximately $130,575.16, together with the delay time costs of $550,236.13, together with the administrative costs of $32,161.61 for a total amount of no less than $712,972.90, and to enter any further Order this Honorable Court may deem just and proper, including but not limited to punitive damages, to compensate Plaintiff for intentional interference by Defendant.

And Plaintiff shall ever pray.

Date: December 4, 2017                               Forr, Stokan, Huff, Kormanski & Naugle


      /s/ James R. Huff, II, Esq.
By:    James R. Huff, II, Esquire
        PA I.D. # 33270
        Attorneys for Plaintiff
        1701 Fifth Avenue
        Altoona, PA   16602
        (814) 946-4316