IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| PROFESSIONAL, INC. d/b/a, | ) | Case No. 3:17-cv-185 |
| PROFESSIONALS AUTO BODY, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| v. | ) | |
| | ) | |
| PROGRESSIVE CASUALTY INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

### I. Introduction

Pending before the Court is the Motion to Dismiss filed by Defendant Progressive Casualty Insurance Company ("Progressive") (ECF No. 29). The Motion has been fully briefed (*see* ECF Nos. 30, 31) and is ripe for disposition. For the reasons stated below, the Court will **GRANT in PART, and DENY in PART**, Progressive's Motion to Dismiss.

### II. Jurisdiction

Subject matter jurisdiction exists under 28 U.S.C. § 1332 because the parties are completely diverse and the amount in controversy exceeds $75,000. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the events giving rise to the claims occurred in the Western District of Pennsylvania.

### III. Background

#### A. Factual Background[1]

Plaintiff Professionals Inc., d/b/a Professionals Auto Body ("Professionals") is an automobile repair shop with locations in Duncansville and Altoona, Pennsylvania. (ECF No. 18 at ¶¶ 1, 3.) Defendant Progressive is an insurance company. (*Id.* at ¶ 4.)

Professionals repaired cars that were covered by Progressive's auto insurance policy. (*Id.* at ¶ 6.) These cars were covered because the cars' owners, or Liable Third-Parties, owned Progressive policies.[2] (*Id.*)

The Insureds and Third-Party Claimants signed written authorizations directing Professionals to make the repairs "reasonable and necessary" to return the vehicles to their pre-loss conditions. (*Id.* at ¶ 7.)

Professionals executed Assignment of Proceeds agreements with the Insureds and Third-Party Claimants that authorized Professionals to recover any unpaid balances for Professionals' services and repairs.[3] (*Id.* at ¶ 8.) The Assignments of Proceeds allow Professionals to effectively "step into the customer[s'] shoes" and seek damages from Progressive under Progressive's contractual obligations to the Insureds and Third-Party

---

[1] The facts contained in this section are derived from Plaintiff's Amended Complaint (ECF No. 18). The Court accepts these facts as true for the sole purpose of deciding the pending Motion to Dismiss.

[2] The Court will refer to customers of Professionals who held a Progressive policy as "Insureds." The Court will refer to customers of Professionals who did not have a Progressive policy, but who were in an automobile accident with a liable Progressive customer, as "Third-Party Claimants." The Court will refer to the liable Progressive customers who caused damage to the vehicles of Professionals' customers as "Liable Third-Parties."

[3] The Court notes that Professionals attached these Assignment of Proceeds agreements to its Amended Complaint. (*See* ECF No. 18-1, 18-2, 18-3. 18-4. 18-5, 18-6, 18-7, 18-8, 18-9, 18-10, 18-11, 18-12, 18-13.)

2

Claimants. (*Id.* at ¶ 46.) The Assignments of Proceeds do not restrict Professionals' right to pursue payment directly from the Insureds or Third-Party Claimants. (*Id.* at ¶ 55.)

Progressive had a contractual duty to the Insureds and Third-Party Claimants to compensate Professionals for the reasonable and necessary costs to return the covered vehicles to their pre-loss conditions. (*Id.* at ¶ 62.) But rather than agree to reimburse Professionals for the cost of making reasonable and necessary repairs, Progressive directed Professionals to "utilize inferior parts and/or to perform inferior service." (*Id.* at ¶ 77.) Professionals refused, and instead "perform[ed] all reasonable and necessary repairs to place the vehicles in their pre-loss condition[s]." (*Id.* at ¶ 79.) When Professionals sought payment from Progressive, Progressive merely paid a fraction of the cost of the repairs.[4] (*Id.* at ¶ 43.)

Progressive's failure to compensate Professionals for the reasonable and necessary repairs caused Professionals to suffer at least $712,972.90 in damages, which represents unpaid balances, "delay time costs," and administrative costs. (*Id.* at ¶ 10.)

### B.  Procedural Background

Professionals filed a case in the Court of Common Pleas of Blair County, Pennsylvania, on August 23, 2017, which named approximately twenty-five insurance companies as defendants. (*See* ECF No. 1-3.) On September 21, 2017, the Court of Common Pleas granted a consent decree to sever Progressive from the larger case. (ECF No. 1-2.) Progressive subsequently removed the case to this Court. (ECF No. 1.)

---

[4] Professionals attaches as Exhibit A to its Amended Complaint hundreds of pages of invoices for repairs made by Professionals for which Progressive only partially reimbursed Professionals. (*See* ECF No. 18-1, 18-2, 18-3. 18-4. 18-5, 18-6, 18-7, 18-8, 18-9, 18-10, 18-11, 18-12, 18-13.)

3

Professionals filed an Amended Complaint on December 4, 2017. (ECF No. 18.) Professionals asserts four counts against Progressive: (1) breach of contract; (2) bad faith; (3) intentional interference with business relations; and (4) quantum meruit. (*See id.*) Progressive now moves to dismiss the Amended Complaint in its entirety. (ECF No. 29.)

## IV. Legal Standard

### A. Motion to Dismiss

A complaint may be dismissed under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016). But detailed pleading is not generally required. *Id.* The Rules demand only "a short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).

Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps.[5] First, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements

---

[5] Although *Iqbal* described the process as a "two-pronged approach," *Iqbal*, 556 U.S. at 679, the Supreme Court noted the elements of the pertinent claim before proceeding with that approach, *id.* at 675-79. Thus, the Third Circuit has described the process as a three-step approach. *See Connelly*, 809 F.3d at 787; *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 n.4 (3d Cir. 2011) (citing *Santiago v. Warminster Township*, 629 F.3d 121, 130 (3d Cir. 2010)).

4

of a claim are not entitled to the assumption of truth.") (citation omitted). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.; see also Connelly*, 809 F.3d at 786. Ultimately, the plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

V. Discussion

    A. **This Court Will Deny Progressive's Motion to Dismiss Professionals' Breach of Contract Claim**

        1. **Professionals Pleaded a Plausible Breach of Contract Claim[6]**

Progressive argues that Professionals failed to state a plausible breach of contract claim because it failed to sufficiently plead the existence of a contract, the terms of the contract that was breached, and damages caused by any breach. (ECF No. 30 at 3-5.)

---

[6] A federal court sitting in diversity must apply the choice-of-law rules of the State in which it sits. *Klaxon Co. v. Stentor Electric Manufacturing Co., Inc.*, 313 U.S. 487, 496–497 (1941). Under Pennsylvania's choice-of-law rules, an insurance contract is governed by the law of the State in which it is contracted and delivered. *McMillan v. State Mutual Life Assurance Co. of America*, 922 F.2d 1073, 1074–1075 (3d Cir. 1990); *Crawford v. Manhattan Life Insurance Co. of New York*, 208 Pa. Super. 150, 221 A.2d 877, 880 (Pa. Super. Ct. 1966). Given that Professionals is a Pennsylvania corporation with its principal place of business in Duncansville, it is likely that most of its customers are Pennsylvania citizens and, accordingly, that the insurance policies issued by Progressive were delivered in Pennsylvania. In any event, the parties rely on Pennsylvania law to support their positions—both exclusively cite to Pennsylvania cases to support their respective arguments. "Since neither party appears to question the application of Pennsylvania law to this case, the Court will analyze the disputed substantive issues in accordance with the law of Pennsylvania." *Peterman v. Harford Mut. Ins. Co.*, No. CIV.A. 3:13-263, 2014 WL 4199280, at *2 (W.D. Pa. Aug. 22, 2014) (Gibson, J.) (citing *Smith v. Allstate Insurance Co.*, 904 F. Supp. 2d 515, 518, n. 1 (W.D. Pa. 2012)).

Progressive further asserts that Professionals does not have standing to pursue a breach of contract claim on behalf of the Third-Party Claimants who, by definition, are not parties to any agreement with Progressive. (ECF No. 4.)

In response, Professionals contends that it sufficiently pleaded a breach of contract claim because it alleged that Progressive had insurance contracts with the Insureds and the Liable Third-Parties and that these contracts required Progressive to pay for reasonable and necessary repairs. (ECF No. 31 at 3.) Professionals additionally avers that it sufficiently pleaded damages because Professionals customers' assigned Professionals their claims against Progressive and because the damages that Professionals requests are the amounts that its customers would have to pay Professionals if Progressive does not pay the repair costs in full. (*Id.* at 6.)

"To establish a breach of contract under Pennsylvania law, a plaintiff must show: '(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages.'" *Orange v. Starion Energy PA, Inc.*, No. 16-1949, 2017 WL 4548069, at *2 (3d Cir. Oct. 12, 2017) (quoting *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003)).

Professionals stated a breach of contract claim. Professionals sufficiently alleged each element of breach of contract under Pennsylvania law. Professionals alleges (1) the existence of contracts between Progressive and the Insureds and Liable Third-Parties and the contracts' essential term, namely that Progressive had a duty to pay for "any and all damages for which the insured becomes liable caused by an accident." (*Id.* at ¶ 42.) Professionals alleges (2) that Progressive breached the contracts by failing to pay for all

6

reasonable and necessary repairs. (*Id.* at ¶ 44.) Finally, Professionals alleges (3) damages; Professionals' customers assigned Professionals the rights to pursue their claims against Progressive and, if Progressive does not cover the full cost of the repairs, Professionals' customers may be liable for the difference. (*See id.* at ¶ 55.) Therefore, the Court finds that Professionals has stated a plausible breach of contract claim.[7]

### 2. Professionals Has Standing to Pursue Breach of Contract Claims on Behalf of Third-Party Claimants

Progressive argues that Professionals lacks standing to pursue breach of contract claims on behalf of the Third-Party Claimants—the customers of Professionals who did not have a Progressive policy themselves, but who were in automobile accidents with Liable Third-Parties who were insured by Progressive—because Professionals did not allege that the Third-Party Claimants were third-party beneficiaries to the insurance contracts at issue. (ECF No. 30 at 4.) In response, Professionals argues that the Third-Party Claimants have standing because the insurance contracts explicitly identify the Third-Party Claimants as third-party beneficiaries. (ECF No. 31 at 5.) Progressive further

---

[7] The Court notes that the only case that Progressive cites to support its argument that Professionals failed to state a breach of contract claim is inapposite because it applied Pennsylvania's higher pleading standard. *See Williams v. Nationwide Mut. Ins. Co.*, 750 A.2d 881, 884 (Pa. Super. Ct. 2000) (noting that "the insureds fail to attach the pertinent parts of the insurance policies to their complaint as required by Pa. R. C.P. 1019(h)"). "Pennsylvania is a fact-pleading state." *McShea v. City of Philadelphia*, 606 Pa. 88, 96, 995 A.2d 334, 339 (2010) (internal citations omitted.) But this Court "applies the Federal Rules of Civil Procedure, which do not require the level of pleading specificity that Pennsylvania does." *Miller v. Evenflo Co., Inc.*, No. 09-CV-108, 2009 WL 10689606, at *5 (W.D. Pa. Dec. 21, 2009) (Gibson, J.) (citing *Alpha Tau Omega Fraternity v. Univ. of Pennsylvania*, 464 A.2d 1349, 1352 (Pa. 1983)) ("Pennsylvania is a fact-pleading state [where] [a] complaint must not only give the defendant notice of what the plaintiffs' claim is and the grounds upon which it rests, but it must also formulate the issues by summarizing those facts essential to support the claim."); *Husava v. Mohenis Servs., Inc.*, No. CIV.A. 08-0309, 2008 WL 4613999, at *1 (W.D. Pa. Oct. 15, 2008) (Lancaster, J.) ("In considering a Rule 12(b)(6) motion, we must be mindful that Federal courts require notice pleading, as opposed to the heightened standard of fact pleading.")

7

contends that the Third-Party Claimants have standing because they are intended beneficiaries of the insurance contracts. (*Id.*)

"Whether a party is a third-party beneficiary with standing to enforce a contract is a question of law for the Court." *Guerra v. Springdell Vill. Homeowners Ass'n*, No. CIV.A. 11-200, 2011 WL 1303360, at *2 (E.D. Pa. Apr. 6, 2011) (citing *Shumate v. Twin Tier Hospitality, LLC*, 655 F. Supp. 2d 521, 535 (M.D. Pa. 2009)).

"The Pennsylvania Supreme Court has adopted the Restatement (Second) of Contracts § 302 which allows for third-party intended beneficiaries to sue for breach of contract 'even though the actual parties to the contract did not express an intent to benefit the third party.'" *Shumate*, 655 F. Supp. 2d at 535 (quoting *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 168 (3d Cir. 2008)).

The Pennsylvania Supreme Court has articulated "a two part test for determining whether one is an intended third party beneficiary: (1) the recognition of the beneficiary's right must be "appropriate to effectuate the intention of the parties," and (2) the performance must "satisfy an obligation of the promisee to pay money to the beneficiary" or "the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." *Guy v. Liederbach*, 501 Pa. 47, 60, 459 A.2d 744, 751 (1983); *see Burks v. Fed. Ins. Co.*, 2005 PA Super 297, ¶ 8, 883 A.2d 1086, 1088 (2005); *Kirschner v. K & L Gates LLP*, 2012 PA Super 102, 46 A.3d 737, 762 (2012).[8]

---

[8] "The first requirement for implied third-party beneficiary status is a standing requirement vesting the court with discretion to determine whether all parties to the contract intended to benefit the third party." *Developers Sur. & Indem. Co. v. Mathias*, No. 1:12-CV-2216, 2013 WL 6504751, at *4 (M.D. Pa. Dec. 11, 2013) (citing *Burks*, 883 A.2d at 1088). "The second element of proof focuses on the specific nature of contractual promises . . . [and] delineates and restricts the types of claimants

8

Under Pennsylvania's Motor Vehicle Financial Responsibility Law's "minimum policy" requirement, "[a]ll insurers subject to this chapter shall make available for purchase a motor vehicle insurance policy which contains only the minimum requirements of financial responsibility . . . as provided for in this chapter." 75 Pa. C.S. § 1711. The statute defines "financial responsibility" as "[t]he ability to respond in damages for liability on account of accidents arising out of the maintenance or use of a motor vehicle in the amount of . . . $5,000 because of damage to property of others in any one accident." *Id.* at § 1702. Therefore, the Motor Vehicle Financial Responsibility Law requires that drivers maintain insurance coverage of $5,000 for damage they cause to another's property. *See* "Questions and Answers About Automobile Insurance in Pennsylvania," Pennsylvania Insurance Department (available at http://www.insurance.pa.gov/ Documents/auto_faq.pdf) (last accessed 2/22/2018.) The Court takes judicial notice of Pennsylvania's minimum insurance coverage requirements.[9]

Professionals has standing to assert breach of contract claims on behalf of the Third-Party Claimants. Given Pennsylvania's Motor Vehicle Financial Responsibility Law's minimum coverage requirement, two reasonable inferences can be drawn, each of which is independently sufficient to confer standing on Professionals: (1) the Third-Party

---

who may qualify as implied third-party beneficiaries." *Mathias*, 2013 WL 6504751, at *4 (citing *Scarpitti v. Weborg*, 530 Pa. 366, 371, 609 A.2d 147, 150 (1992)). "If a party satisfies both parts of the test, a claim may be asserted under the contract." *Scarpitti*, 530 Pa. at 371. (internal citations omitted).

[9] *See Estate of Patterson v. City of Pittsburgh*, No. CIV.A. 11-1021, 2011 WL 4860003, at *5 (W.D. Pa. Oct. 13, 2011) (citing *McDermott v. John Hancock Mut. Life Ins. Co.*, 255 F.3d 562, 563 (3d Cir. 1958)) ("A Court may take judicial notice of statutes that are beyond the pleadings."); *Dean v. Specialized Sec. Response*, 876 F. Supp. 2d 549, 557 (W.D. Pa. 2012) (citing *Lamar v. Micou*, 114 U.S. 218, 223 (1885)) ("Federal courts are required to take judicial notice of state statutes.")

9

Claimants are parties to the Progressive insurance contracts as third-party beneficiaries because the contracts explicitly provide that they extend insurance coverage of at least $5,000 for property damage to a third-party's vehicle and (2) even if the insurance contracts do not explicitly state that those who sustain property damages are "third-party beneficiaries," the Third-Party Claimants are *intended beneficiaries* of the Liable Third-Parties' insurance contracts because the purpose of the minimum requirement is to ensure that drivers maintain sufficient coverage to pay for damage to other drivers' vehicles.

Viewing the facts in the light most favorable to Professionals—as this Court must do at this stage—the Court concludes that Professionals has standing to pursue breach of contract claims on behalf of the Third-Party Claimants.

### 1. The Court Will Deny Progressive's Motion to Dismiss Professionals' Bad Faith Claim

Progressive argues that this Court should dismiss Professionals' bad faith claim for three reasons: (1) Professionals lacks standing to bring a bad-faith claim on behalf of the Third-Party Claimants (ECF No. 30 at 1); (2) Professionals failed to sufficiently plead a bad faith claim on behalf of Insureds for whom it performed repairs because Professionals fails to assert facts showing that Progressive violated the Motor Vehicle Physical Damage Appraiser Act, Progressive partially paid the claims due under the policies, and Professionals' allegations fail to establish that Progressive's conduct was unreasonable (*id.* at 6-8); and (3) Professionals' bad faith claims based on repairs completed before August 23, 2015 are barred by the statute of limitations. (*Id.* at 8.)

In response to Progressive's first argument, Professionals concedes that Pennsylvania law does not recognize bad faith claims asserted by "third-party or intended beneficiaries of insurance contracts." (ECF No. 31 at 6.) In response to Progressive's second argument, Professionals argues that it pleaded the elements of a bad faith claim as to the Insureds and further argues that Pennsylvania law does not require complete denial of a claim to state a claim for bad faith. (*Id.* at 8-9.) In response to Progressive's third argument, Professionals "concedes that the Pennsylvania Supreme Court has determined that a two year statute of limitations applies to statutory bad faith claims." (*Id.* at 8.)

"A claim based on an insurer's bad faith conduct against an insured is recognized in Pennsylvania by means of § 8371." *Smith v. State Farm Mut. Auto. Ins. Co.*, 506 F. App'x 133, 136 (3d Cir. 2012).[10]

"[T]o recover in a bad faith action, the plaintiff must present clear and convincing evidence (1) that the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew of or recklessly disregarded its lack of a reasonable basis" when it denied coverage. *Rancosky v. Washington Nat'l Ins. Co.*, 170 A.3d 364, 365 (Pa. 2017) (citing *Terletsky v. Prudential Property & Cas. Ins. Co.*, 437 Pa. Super. 108, 649 A.2d 680 (1994)); *Meyers v. Protective Ins. Co.*, No. 3:16-CV-01821, 2017 WL 4516712, at *4 (M.D. Pa. Oct. 10, 2017); *Grossman v. Metro. Life Ins. Co.*, No. CV 17-2940, 2018 WL

---

[10] As the Third Circuit has stated, "Pennsylvania courts define bad faith in this context as '[a] frivolous or unfounded refusal to pay proceeds of a policy . . . a breach of a known duty (i.e., good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.'" *Smith*, 506 F. App'x at 136 (quoting *Nw. Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 137 (3d Cir. 2005)).

347574, at *3 (E.D. Pa. Jan. 10, 2018). "Bad faith claims are fact specific and depend on the conduct of the insurer vis à vis the insured." *Meyers*, 2017 WL 4516712, at *4 (internal quotation marks omitted) (quoting *Condio v. Erie Ins. Exchange*, 899 A.2d 1136, 1143 (Pa. Super. Ct. 2006)).

"Under Pennsylvania law, as well as in the majority of American jurisdictions, an insured's claims against his or her insurer, in the nature of . . . bad faith . . . are assignable." *Brown v. Candelora*, 708 A.2d 104, 111 (Pa. Super. Ct. 1998) (collecting cases); *Haugh v. Allstate Ins. Co.*, 322 F.3d 227, 239 (3d Cir. 2003) (citing *Brown*); *Wolfe v. Allstate Prop. & Cas. Ins. Co.*, 877 F. Supp. 2d 228, 231 (M.D. Pa. 2012).

"[U]nder Pennsylvania law, a third party claimant cannot have a cause of action for bad faith." *See Empire Fire & Marine Ins. Co. v. Jones*, 739 F. Supp. 2d 746, 769 (M.D. Pa. 2010) (citing *Allen v. General Accident Ins. Co.*, 2004 WL 323664 (Pa. Com. Pl. 2004)); *see Strutz v. State Farm Mut. Ins. Co.*, 415 Pa. Super. 371, 375 (1992). Accordingly, the Court will dismiss Professionals' bad faith claim in regards to the Third-Party Claimants.

Professionals sufficiently pleaded a bad faith claim in regards to the Insureds. Professionals alleges that Progressive failed to reimburse it for the full amount of the reasonable and necessary repairs without a valid justification. (ECF No. 18 at ¶¶ 62, 63, 64.) Furthermore, Progressive knew of or recklessly disregarded this lack of a reasonable basis because it failed to fully reimburse Professionals despite Professionals informing Progressive on several occasions that it had failed to pay the full cost of all reasonable and necessary repairs on each of the vehicles that Professionals serviced. (*Id.* at ¶ 81.) In fact, Professionals began sending "Supplements" to Progressive notifying them about the

unpaid repairs as early as the fall of 2013. (*See* ECF No. 18-12.) The fact that Progressive has a long history of failing to fully reimburse Professionals supports Professionals' argument that Progressive acted in bad faith.

Professionals will certainly need to come forward with evidence to substantiate its bad faith claim at the summary judgment stage. However, viewing the facts in the light most favorable to Professionals and drawing all reasonable inferences in its favor, Professionals has satisfied its burden at the motion to dismiss stage of alleging a plausible bad faith claim. Accordingly, the Court will deny Progressive's motion to dismiss Professionals' bad faith claim in regards to the Insureds.

"[A] bad faith action under Section 8371 is subject to a two-year statute of limitations." *Ash v. Cont'l Ins. Co.*, 2004 PA Super 424, ¶ 19, 861 A.2d 979, 984 (2004); B*aer v. Harford Mut. Ins. Co.*, No. CIV.A. 05-1346, 2005 WL 3054354, at \*5 (E.D. Pa. Nov. 14, 2005). Accordingly, the Court will grant Progressive's motion to dismiss Professionals' bad faith claim in regards to claims that accrued prior to August 23, 2015.

### 2. The Court Will Grant Progressive's Motion to Dismiss Professionals' Intentional Interference with Business Relations Claim

Progressive argues that this Court should dismiss Professionals' intentional interference claim because Professionals fails to allege that any of its contracts with its customers were breached or not fully performed because of Progressive's alleged breach, emphasizing that Professionals admitted that it "completed the terms of its contract with each vehicle owner." (ECF No. 30 at 9, quoting the Amended Complaint at ¶ 79.) In

response, Professionals contends that it properly asserted an intentional interference claim because it suffered actual losses due to Progressive's conduct. (ECF No. 31 at 10.)

"Under Pennsylvania law, a tortious interference with contractual relations claim has four elements: (1) the existence of a contractual, or a prospective contractual relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) the absence of a privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct." *Hartford Steam Boiler Inspection v. Int'l Glass Prod., LLC*, No. 2:08CV1564, 2016 WL 5468111, at *32 (W.D. Pa. Sept. 29, 2016) (citing *Kepner v. Kepner*, No. 835 EDA 2015, 2015 WL 7283034, at *4 (Pa. Super. Ct. Nov. 18, 2015)).

The Court agrees with Progressive that Professionals failed to plead a plausible tortious interference claim. As noted above, the tort of intentional interference requires "purposeful action on the part of the defendant, *specifically intended to harm the existing relation* . . . ." *Hartford Steam Boiler Inspection*, 2016 WL 5468111, at *32. The facts alleged in the Amended Complaint do not give rise to a reasonable inference that Progressive specifically intended to interfere with Professionals' contracts with its customers; rather, they give rise to a reasonable inference that Progressive sought to underpay Professionals for the repairs that Professionals performed on covered vehicles. Because Professionals fails to allege facts that give rise to a reasonable inference that Progressive specifically intended to harm Professionals' contracts with its customers, the Court will grant Progressive's motion to dismiss Professionals' intentional interference claim.

14

### 3. The Court Will Deny Progressive's Motion to Dismiss Professionals' Unjust Enrichment Claim

Progressive argues that this Court should dismiss Professionals' unjust enrichment claim for three reasons: (1) Professionals did not confer any benefit on Progressive; (2) Professionals did not accept any benefit allegedly conferred; and (3) express contracts govern the repairs at issue. (ECF No. 30 at 10.) In response, Professionals contends that it conferred a benefit on Progressive which Progressive accepted, namely its repairing the vehicles covered under Progressive's policies despite not being fully compensated by Progressive for its repair work. (ECF No. 31 at 12.) Professionals further asserts that it properly pleaded unjust enrichment in the alternative to its breach of contract claims. (*Id.*)

"To establish a claim for unjust enrichment under Pennsylvania law, a plaintiff must allege facts demonstrating (1) a benefit conferred on the defendant by the plaintiff, (2) appreciation of such benefit by the defendant, and (3) acceptance and retention of such benefit under circumstances such that it would be inequitable for the defendant to retain the benefit without payment to the plaintiff." *iRecycleNow.com v. Starr Indem. & Liab. Co.*, 674 F. App'x 161, 162 (3d Cir. 2017) (citing *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 273 (3d Cir. 2010)). To prevail on an unjust enrichment claim, "a claimant must show that the party against whom recovery is sought has received a benefit that would be unconscionable for her to retain." *Massachusetts Mut. Life Ins. Co. v. Curley*, 459 F. App'x 101, 108 (3d Cir. 2012) (internal quotation marks omitted) (quoting *EBC*, 618 F.3d at 273).

Professionals stated a plausible unjust enrichment claim. Professionals conferred a benefit on Progressive by discharging Progressive's obligations to pay for repairs under

its policies.[11] Progressive accepted and retained the benefit because it failed to fully compensate Professionals.[12] Furthermore, it would be unjust for Progressive to retain this benefit.[13]

Viewing the allegations in the Amended Complaint as true and drawing all reasonable inferences in Professionals' favor, the Court concludes that Professionals stated a plausible claim for unjust enrichment. Accordingly, the Court will deny Progressive's motion to dismiss Professionals' unjust enrichment claim.

---

[11] The Court rejects Progressive's contention that Professionals did not confer a benefit onto Progressive but rather merely conferred a benefit onto its own customers. By repairing the cars owned by Progressive customers, Professionals benefitted Progressive.

[12] The sole case cited by Progressive is inapposite. Progressive cites *Goldsmith Assocs., Inc. v. Del Frisco's Rest. Grp., LLC*, No. CIV.A. 09-1359, 2009 WL 3172752 (E.D. Pa. Oct. 1, 2009) for the proposition that Professionals did not sufficiently allege an unjust enrichment claim because Progressive did not "agree or request" the repair work for which Professionals seeks compensation. (ECF No. 30 at 11.) However, the holding from *Goldsmith Assocs.* is limited to cases involving unjust enrichment claims brought by contractors or subcontractors. *See id.* at 5 (holding that "[i]n sum, the controlling case of *D.A Hill* stands for the proposition that subcontractors may not recover from owners on a theory of unjust enrichment unless (1) the owner requested the benefit or (2) the owner misled the subcontractor.") This case involves an automobile repair shop, not a subcontractor. Therefore, *Goldsmith Assocs.* does not apply here.

[13] The Court rejects Progressive's argument that Professionals' unjust enrichment claim fails because express contracts apply to the repairs at issue. "Under Pennsylvania law, 'the doctrine of unjust enrichment is inapplicable when the relationship between parties is founded upon a written agreement or express contract, regardless of how harsh the provisions of such contracts may seem in the light of subsequent happenings.'" *Grudkowski v. Foremost Ins. Co.*, 556 F. App'x 165, 169–70 (3d Cir. 2014) (citing *Wilson Area Sch. Dist. v. Skepton*, 586 Pa. 513, 895 A.2d 1250, 1254 (2006)). There is no allegation that the relationship between Professionals and Progressive is governed by a contract. Furthermore, the fact that Professionals executed repair contracts with its customers does not prevent it from bringing an unjust enrichment claim against Progressive based on repair work it completed that benefitted Progressive. The cases cited by Progressive do not compel a different result. *See Mitchell v. Moore*, 1999 PA Super 77, ¶ 7, 729 A.2d 1200, 1203 (1999) (noting that unjust enrichment cannot exist "where a written or express contract *between parties exists*") (emphasis added); *Roman Mosaic & Tile Co. v. Vollrath*, 226 Pa. Super. 215, 218, 313 A.2d 305, 307 (1973) (holding that to prevail on unjust enrichment claim, the plaintiff who is not a party to the contract "must show that she wrongfully secured or passively received a benefit that it would be unconscionable for her to retain.")

### 4.  Res Judicata Does Not Bar Professionals' Claims

Finally, Progressive argues that the doctrine of *res judicata* bars Professionals' claims for intentional interference with business relations and unjust enrichment because Professionals asserted identical claims against Progressive in a previous litigation in the Middle District of Florida. (ECF No. 30 at 13.) In response, Professionals asserts that *res judicata* does not bar its claims because the individuals whose repairs are at issue in this case were not included in the prior action. (ECF No. 31 at 12.)

"In order to raise successfully the defense of res judicata, the party asserting the defense must demonstrate that (1) there has been a final judgment on the merits in a prior suit; (2) the prior suit involves the same parties or their privies and (3) the subsequent suit is based on the same causes of action." *Purter v. Heckler*, 771 F.2d 682, 690 (3d Cir. 1985) (quoting *United States v. Athlone Industries, Inc.*, 746 F.2d 977, 983 (3d Cir. 1984)). In determining whether the subsequent case is based on the "same causes of action," courts in the Third Circuit focus on "whether the acts complained of were the same, whether the material facts alleged in each suit were the same, and whether the witnesses and documentation required to prove such allegations were the same." *Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 963 (3d Cir. 1991) (quoting *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 984 (3d Cir. 1984)).

Progressive failed to satisfy its burden to establish *res judicata*. As Professionals contends, this case involves different causes of action because the individuals whose repairs Progressive failed to fully pay for "were not included in the prior action." (ECF No. 31 at 9.) Furthermore, Progressive raised the *res judicata* argument halfheartedly in a

footnote on the last page of its brief and provided minimal information about the prior action. (*See* ECF No. 30 at 13.) Accordingly, the Court finds that Progressive failed to satisfy its burden of demonstrating that *res judicata* bars Professionals' claims.

**VI.     The Court Will Deny Professionals Leave to Amend**

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *CollegeSource, Inc. v. AcademyOne, Inc.*, 597 F. App'x 116, 126 (3d Cir. 2015) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008)). Amendment would be futile "if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted." *Munchak v. Ruckno*, 692 F. App'x 100, 102 (3d Cir. 2017) (internal citations omitted).

The Court finds that amendment would be futile. Given the nature of the facts in this case, even if the Court granted Professionals leave to amend Professionals would be unable to sufficiently plead a claim for intentional interference with business relations to survive a 12(b)(6) motion to dismiss. Accordingly, the Court denies Professionals leave to amend.

**VII.    Conclusion**

The Court will **GRANT in part and DENY in part** Progressive's Motion to Dismiss (ECF No. 29). Specifically, the Court will deny Progressive's Motion to Dismiss with respect to Professionals' breach of contract, bad faith, and unjust enrichment

18

claims.[14] Additionally, the Court will grant Progressive's Motion to Dismiss with respect to Professionals' tortious interference with business relations claim, without leave to amend.

An appropriate order follows.

---

[14] However, as explained above, the Court grants Progressive's motion to dismiss Professionals' bad faith claim with respect to the Third-Party Claimants and the causes of action that accrued prior to August 23, 2015.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PROFESSIONAL, INC. d/b/a, PROFESSIONALS AUTO BODY, | ) ) ) ) | Case No. 3:17-cv-185 |
| Plaintiff, | ) ) | JUDGE KIM R. GIBSON |
| v. | ) ) ) | |
| PROGRESSIVE CASUALTY INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) | |

## ORDER

NOW, this 26th day of February, 2018, upon consideration of Progressive's Motion to Dismiss (ECF No. 29), and for the reasons set forth in the accompanying Memorandum Opinion, it is **HEREBY ORDERED** that said motion is **GRANTED in part and DENIED in part** as follows:

1. The Court **denies** Progressive's Motion to Dismiss with respect to Professionals' breach of contract, bad faith, and unjust enrichment claims.

    a. However, as explained above, the Court grants Progressive's motion to dismiss Professionals' bad faith claim with respect to the Third-Party Claimants and the causes of action that accrued prior to August 23, 2015.

2. The Court **grants** Progressive's Motion to Dismiss with respect to Professionals' tortious interference with business relations claim, without leave to amend.

BY THE COURT:

*/s/ Kim R. Gibson*

KIM R. GIBSON
UNITED STATES DISTRICT JUDGE