IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PROFESSIONAL, INC., | )<br>) |
| Plaintiff, | )<br>) |
| vs. | ) Civil Action No. 3:17-cv-185<br>) Judge Stephanie L. Haines |
| PROGRESSIVE CASUALTY INSURANCE<br>COMPANY, | )<br>)<br>) |
| Defendant. | ) |

**OPINION AND ORDER**

Pending before the Court is a motion for summary judgment (ECF No. 65) filed by Defendant Progressive Casualty Insurance Company ("Defendant") which seeks judgment in its favor on all remaining claims in the amended complaint (ECF No. 18) filed by Plaintiff Professionals Inc., d/b/a Professionals Auto Body ("Plaintiff"). The operative claims in Plaintiff's amended complaint (ECF No. 18) are unjust enrichment (Count One), breach of contract (Count Two), and bad faith (Count Three). Plaintiff seeks damages in the amount of $712,972.90 under each of the three counts, consisting of $130,575.16 for unpaid balances Plaintiff defines as "short pays"; $550,236.13 for delay costs; and $32,161.61 for administrative costs, as well as costs and punitive damages on the bad faith claim.

Defendant has filed a motion for summary judgment on these claims (ECF No. 65), along with a brief in support (ECF No. 66), concise statement of material facts (ECF No. 67), and appendix thereto (ECF No. 68). Plaintiff filed a response (ECF No. 74) along with a brief in

1

opposition (ECF No. 79) and a concise statement of material facts (ECF No. 83).[1] Defendant also has filed a reply brief (ECF No. 85) and a response to Plaintiff's statement of material facts (ECF No. 86). The Court held oral argument on this matter on July 9, 2020 (ECF No. 91). The matter has been fully briefed and is ripe for disposition.

For the reasons detailed below, the Court will GRANT Defendant's motion for summary judgment (ECF No. 65) and enter judgment in favor of Defendant and against Plaintiff in this matter.

### I.     Factual and Procedural Background

Plaintiff initially filed this case in the Cambria County Court of Common Pleas against 32 insurers alleging $8.6 million in damages (ECF No. 1-2). Pursuant to a consent decree, Defendant was severed from that action and removed its case with Plaintiff to this Court (ECF No. 1 at ¶2). Plaintiff is an automobile repair shop with locations in Duncansville and Altoona, Pennsylvania (ECF No. 18 at ¶¶ 1,3). Defendant is an insurance company. Plaintiff alleges it repaired automobiles that were covered by insurance policies issued by Defendant, which included repairing automobiles of customers who held a policy with Defendant ("Insureds") and customers who did not hold a policy with Defendant but were the owners of automobiles damaged by a liable person who did hold a policy with Defendant ("Third-Party Claimants"). *Id.* at ¶6. The Insureds and Third-Party Claimants signed written authorizations directing Plaintiff to make the repairs "reasonable and necessary" to return the vehicles to their pre-loss conditions. *Id.* at ¶7. Plaintiff then executed Assignment of Proceeds agreements ("Assignments") with the Insureds and Third-

---

[1] The Court permitted the parties to file ECF Nos. 69, 70, 75, 81, and 82 under seal, with redacted copies filed of public record, but the Court is able to address the issues raised in the summary judgment motion without reference to the information deemed confidential by the parties.

Party Claimants that authorized Plaintiff to recover any unpaid balances for Plaintiff's services and repairs. *Id.* at ¶8.

Plaintiff alleges that Defendant refused to reimburse it for the cost for making reasonable and necessary repairs and instead directed Plaintiff to use inferior parts and/or perform inferior service. *Id.* at ¶77. Plaintiff alleges it refused to do so and performed all reasonable and necessary repairs to place the vehicles in pre-loss conditions. *Id.* at ¶79. Plaintiff claims Defendant then paid Plaintiff merely a fraction of the cost of these repairs. *Id.* at ¶43. Plaintiff's claims against Defendant are based on Defendant's alleged contractual duty to the Insureds and Third-Party Claimants to compensate Plaintiff for the reasonable and necessary costs to return the covered vehicles to their pre-loss conditions. *Id.* at ¶62. Plaintiff alleged that Defendant's failure to compensate Plaintiff for the reasonable and necessary repairs caused Plaintiff to suffer at least $712,972.90 in damages, which represents unpaid balances, "delay time costs", and administrative costs. *Id.* at ¶10. Following the Court's ruling (ECF No. 37) on Defendant's motion to dismiss Plaintiff's amended complaint (ECF No. 29), the remaining claims against Defendant are for breach of contract, bad faith,[2] and unjust enrichment claims.

Plaintiff asserts the Assignments allow Plaintiff to effectively "step into the customer[s'] shoes" and seek damages from Defendant under Defendant's contractual obligations to the Insureds and Third-Party Claimants (ECF No. 18 at ¶46). The Assignments are from 54 Insureds and 43 Third-Party Claimants (collectively, the "Assignors").[3] As the Assignments grant to

---

[2] Specifically, as to the bad faith claims, the Court granted Defendant's motion to dismiss Plaintiff's bad faith claim with respect to the Third-Party claimants and causes of action that accrued prior to August 23, 2015, leaving only the bad faith claim with respect to the Insured claimants.

[3] The Assignment of Proceeds agreements to the Amended Complaint are filed at ECF No. 18-1, 18-2, 18-3, 18-4, 18-5, 18-6, 18-7, 18-8, 18-9, 18-10, 18-11, 18- 12, and 18-13.

3

Plaintiff the contractual obligations Defendant has to its Insureds, and the insureds involved in the accidents with the Third-Party Claimants, Plaintiff's contract claim is necessarily based on the policies of insurance between Defendant and its insureds.

Defendant has produced the declarations pages for the policies at issue, which show that 101 Assignors out of a total of 103 Assignors do not have policies of insurance with the Defendant (ECF No. 67 at ¶10; ECF No. 68-2 through 68-14). These 101 Assignors either had insurance policies with, or had accidents caused by insureds insured by, Progressive Advanced Insurance Company, Progressive Specialty Case Insurance Company, United Financial Casualty Company, Progressive Northern Insurance Company or Progressive Preferred Insurance Company. *Id.* Of the 54 First Party Assignors, only one, Bruce Raab, has an insurance policy with named Defendant Progressive Casualty. *Id.* ¶¶ 5-11. Of the 43 Third Party Assignors, only one was involved in an accident with a Progressive Casualty insured. *Id.* at ¶ 12.[4]

Defendant attached as an exhibit to its concise statement of material facts a sample Pennsylvania policy ("auto policy") (ECF No. 68-15) that contains the following language as to its liability to its insureds for repairs:

> In determining the amount necessary to repair damaged property to its pre-loss physical condition, the amount to be paid by [the insurer]:
>
> (i) will not exceed the prevailing competitive labor rates charged in the area where the property is to be repaired, and the cost of repair or replacement parts and equipment, as reasonably determined by [the insurer]; and
>
> (ii) will be based on the cost of repair or replacement parts and equipment which

---

[4] On June 7, 2012, Plaintiff received an assignment from Third-Party Assignor Abby Moyer relating to a claim that was adjusted prior to the assignment. *Id.* at ¶ 13. Plaintiff concedes the claim regarding Abby Moyer from June 2012 is beyond the statute of limitations and has withdrawn the claim (ECF No. 74).

> may be new, reconditioned, remanufactured, or used, including, but not limited to:
>
>> (a) original manufacturer parts or equipment; and
>>
>> (b) non-original manufacturer parts or equipment.

(ECF No. 68-15 at p. 28).

The auto policy also contains the following language as to the rights of third-parties:

> [the insurer] may not be sued for payment under Part I—Liability To Others until the obligation of an insured person under Part I to pay is finally determined either by judgment after trial against that person or by written agreement of the insured person, the claimant, and [the insurer]. No one will have any right to make [the insurer] a party to a lawsuit to determine the liability of an insured person.

(ECF No. 68-15 at p. 36).

Defendant appears to have only provided a sample auto policy but Plaintiff does not appear to dispute the applicability of the auto policy language as to all of Plaintiff's claim under the Assignments.

As to the damages elements of Plaintiff's claims, Plaintiff contends that it provided superior work to return the vehicles to as close to their pre-loss condition as possible, but that Defendant refused to pay for the level of repairs requested by Plaintiff's customers and at the labor rates at which Plaintiff chooses to charge, resulting in the short pays (ECF No. 79 at p. 4). In addition to the short pays, Plaintiff claims it had to expend time and resources in dealing with Defendant and having Defendant's adjuster return to perform supplemental appraisals on various claims. *Id.* Plaintiff calculated delay time costs in the amount of $550,236.13 and administrative costs in the amount of $32,161.61. *Id.* Plaintiff's delay costs are intended to represent lost revenue due to the Assignors' vehicle taking the spot of a vehicle that could have been in the shop, and the projected administrative costs are based on the number of alleged delayed days multiplied by eight (8) hours multiplied by $1.68 charge per minute of delay. *Id.* at ¶76.

## II. Jurisdiction and Venue

Subject matter jurisdiction exists under 28 U.S.C. §1332 because the parties are completely diverse and the amount in controversy exceeds $75,000. Venue is proper under 28 U.S.C. §1391(b) because a substantial portion of the events giving rise to the claims occurred in the Western District of Pennsylvania.[5]

## III. Standard of Review

In relevant part, Rule 56 provides:

> A party may move for summary judgment, identifying each claim or defense...on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.
>
> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by...citing to particular parts of materials in the record...or...showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(a), (c).

After discovery and upon a motion, Rule 56 requires the entry of summary judgment against a party who "'fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.'" *Marten v. Godwin,* 499 F.3d 290, 295 (3d Cir. 2007) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986)). An issue of material fact is in genuine dispute if the evidence is such that a reasonable jury could decide it in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in

---

[5] As previously determined by the Court, the Court will apply Pennsylvania law in this diversity jurisdiction matter (ECF No. 37 at p. 5).

favor of the non-moving party in light of his burden of proof." *Doe v. Abington Friends Sch.,* 480 F.3d 252, 256 (3d Cir. 2007) (citing *Anderson,* 477 U.S. at 248; *Celotex Corp.,* 477 U.S. at 322-23)).

Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond his or her pleadings and designate specific facts by the use of affidavits, depositions, admissions or answers to interrogatories showing that there is a genuine issue of material fact for trial. *Celotex,* 477 U.S. at 324. The nonmoving party cannot defeat a well-supported motion for summary judgment by simply reasserting unsupported factual allegations contained in his or her pleadings. *Williams v. Borough of West Chester,* 891 F.2d 458, 460 (3d Cir. 1989). However, in deciding a Rule 56 summary judgment motion, the court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences and resolve all doubts in its favor. *Woodside v. Sch. Dist. of Phila. Bd. of Educ.,* 248 F.3d 129, 130 (3d Cir. 2001). The court must not engage in credibility determinations at the summary judgment stage. *Simpson v. Kay Jewelers, Div. of Sterling, Inc.,* 142 F.3d 639, 643 n.3 (3d Cir. 1998).

### IV.   Legal Analysis

Defendant moves for summary judgment as to all of Plaintiff's remaining claims in the amended complaint. The Court addresses each of the remaining claims as follows:

**A. Breach of Contract**

Plaintiff asserts breach of contract claims on behalf of the Insureds and the Third-Party Claimants through the rights it obtained in the Assignments. As a preliminary, but significant issue, 101 Assignors out of a total of 103 Assignors do not have policies of insurance specifically with the Defendant (ECF No. 67 at ¶10). Defendant argues that Plaintiff cannot maintain its breach

of contract or bad faith claims via its assignment from these Assignors as they do not have a contract with Defendant.

Under Pennsylvania law, "one cannot be liable for a breach of contract unless one is party to that contract." *Lockhart v. Fed. Ins. Co.*, 1998 U.S. Dist. LEXIS 4046, No. Civ. A. 96-5330, at *3 (E.D. Pa. Mar. 30, 1998) (internal quotations omitted). The parties agree that two factors are relevant in determining who is the insurer: (1) the extent to which the company was identified as the insurer on the policy documents; and (2) the extent to which the company acted as the insurer. *Brown v. Progressive Ins. Co.*, 2004 PA Super 346, 860 A.2d 493, 498 (Pa. Super. Ct. 2004); *Totty v. Chubb Corp.*, 455 F. Supp. 2d 376, 380-81 (W.D. Pa. 2006). Plaintiff contends that, at all times relevant to the claims set forth in the amended complaint, Defendant was holding itself out as either "Progressive" or "Progressive Casualty Insurance Company". While this representation provides basis for Plaintiff's unjust enrichment claims against Defendant in its own right, Plaintiff's failure to name the appropriate Progressive entity in its breach of contract and bad faith claims is fatal to those claims as to the 101 Assignments based on policies from other entities.

The auto policy issued by Defendant identifies the corporate entity that insures its policy holders. The sample auto policy refers to the company that issued the policy as "we" and "us" and, in the policy's definitions section, defines the words "we" and "us" as used in the policy as "the insurance company named on the declarations page" (ECF No. 68-15 at p. 9). The declarations pages identify in two prominent locations the name of the underwriting company that issued the policy (ECF No. 68-2 through 68-14). Plaintiff is aware of the identities of the entities that issued the policies relating to the Assignments, and Plaintiff has not provided evidence that Defendant Progressive Casualty Insurance Company acted in a fraudulent manner to conceal the identities of these entities from Plaintiff. Nor has Plaintiff offered any evidence that Defendant

Progressive Casualty Insurance Company was the alter ego, *de facto* insurer, or agent of these entities.

To maintain its claims against Defendant, Plaintiff relies on documents of record that are titled only with the "Progressive" logo and contends that the copyright of "progressive.com" lists that it is owned by Defendant Progressive Casualty Insurance Company, but neither of these factors indicate that Defendant, Progressive Casualty Insurance Company, was acting as the insurer to the Insureds or Third-Party Claimants. Unlike in *Brown v. Progressive Ins. Co.*, 860 A.2d 493, 500 (Pa. Super. 2004), the declarations pages identify twice the entity that underwrote the policy. Plaintiff's reliance on Progressive's letterhead or use of the "Progressive" logo in documents and correspondence is unavailing. *See Totty v. Chubb Corp.*, 455 F. Supp. 2d 376, 380-81 (W.D. Pa. 2006). Moreover, Plaintiff did not sue simply "Progressive", or even "Progressive Direct", whose logo appears at the top corner of the declarations pages (ECF No. 68-2 through 68-14). Instead, Plaintiff sued Defendant, though it is not clear why Plaintiff chose to sue Progressive Casualty Insurance Company over any other Progressive corporate entity. Whatever the basis for this decision may be, it does not appear to be based on an investigation into the name of the insurer that provided the policies at issue in this matter. Additionally, even if Defendant provided loss adjustment services for other Progressive corporate entities, this does not make it a party to the underlying insurance contract. *Totty,* 455 F. Supp. at 382 (W.D. Pa. 2006) ("…because Chubb may provide loss adjustment services for Great Northern does not make it a party to each underlying insurance contract").

There remains one Progressive insured, Bruce Raab, whose policy is with Defendant. Additionally, there is one Third-Party Claimant whose vehicle was damaged by a liable person insured by Defendant. However, as set forth below, the record supports that Defendant is entitled

9

to summary judgment as to these claims as well. Indeed, even if Plaintiff had named the appropriate Progressive corporate entities, Plaintiff's claims would still not survive summary judgment.

1. <u>First-Party Breach of Contract Claim</u>

Plaintiff's contention that Defendant failed to fully compensate it according to Plaintiff's labor and repair costs is not enough to create an issue of fact as to its breach of contract claims. Under the auto policy, Defendant has a responsibility to the Insured, and likewise, the Third Party Claimants, to pay the cost of the prevailing competitive labor rates and the cost of repair or replacement parts and equipment, as reasonably determined by Defendant. Allowing Plaintiff to step into the shoes of the policy holders, the contractual obligation transferred by the Assignments is the obligation to pay prevailing competitive labor rates and cost of repair or replacement parts and equipment as reasonably determined by Defendant (ECF No. 68-15 at p. 28).

Plaintiff defines the short pay as the difference between what the insurance company paid and what Plaintiff believes it should have been paid. Contrary to Plaintiff's assertion otherwise, the auto policy does not contain a contractual obligation obligating Defendant to pay Plaintiff what Plaintiff believes it should have been paid. Plaintiff disparages Defendant's argument that the market rate, not an individual auto body repair shop's ability, should dictate what responsibility Defendant has to pay for repairs, but this is exactly what the auto policy provides. Plaintiff has failed to produce any facts to show that it was not compensated for the market rate of labor or for the cost of repair and replacement parts as reasonably determined by Defendant. Plaintiff does not challenge the reasonableness of Defendant's assessment of the costs of labor and repairs, other than to reiterate that it is less than what Plaintiff charges for its labor and repairs. Plaintiff's evidence of its superior service does not change the contractual obligations in the policies, and Plaintiff

cannot maintain its stated breach of contract claims based on the contention it was not paid its subjective assessment of the costs for repairs. Similarly, Plaintiff has not proven its contractual entitlement to its administrative costs and delay times costs.

2. Third-Party Breach of Contract Claim

Plaintiff does not point to any specific facts to prevail on its breach of contract claims as to the Third-Party Claimants but instead relies heavily on case law supporting that it is *possible* to maintain a breach of contract claim as a third-party beneficiary. However, based on the record before the Court, Pennsylvania law and the language of the insurance policies foreclose Plaintiff's recovery in its breach of contract claims as to the Third-Party Claimants.

Under Pennsylvania law, "in the absence of a statute or a policy provision on which such right may be predicated, a person may not maintain a suit directly against [an] insurer to recover on a judgment rendered against the insured." *Philadelphia Forrest Hills Corp. v. Bituminous Cas. Corp.*, 222 A.2d 493, 494 (Pa. Super. Ct. 1966); *see also Apalucci v. Agora Syndicate, Inc.*, 145 F.3d 630, 632 (3d Cir. 1998) ("It is well-settled that under Pennsylvania law, an injured party has no right to directly sue the insurer of an alleged tortfeasor unless a provision of the policy or a statute create such a right."); *Strutz v. State Farm Mut. Ins. Co.*, 609 A.2d 569, 570 (Pa. Super. Ct. 1992) (rejecting an argument that persons injured in a car accident are third-party beneficiaries of the other driver's insurance policy and therefore could bring an action directly against the other driver's insurance company); *See also Kollar v. Miller (In re Kollar)*, 176 F.3d 175, 181 (3d Cir. 1999). Plaintiff has not provided any evidence supporting an applicable statute or policy that allows it to maintain its contract claim on behalf of the Third-Party Claimants.

Plaintiff does not appear to dispute that the language of the policies held by the Insureds, as set forth in the sample auto policy, defines the same obligations extended to the Third-Party Claimants whose vehicles were damaged by Defendant's insureds. The policy provides:

> [the insurer] may not be sued for payment under Part I—Liability To Others until the obligation of an insured person under Part I to pay is finally determined either by judgment after trial against that person or by written agreement of the insured person, the claimant, and [the insurer]. No one will have any right to make [the insurer] a party to a lawsuit to determine the liability of an insured person.

(ECF No. 68-15 at p. 36).

Plaintiffs do not assert the Third-Party Claimants have a judgment entered against the insureds involved in the accidents relating to the Third-Party Claimants, and therefore cannot maintain its breach of contract claim against Defendant. Also, as previously stated, the auto policy does not create an obligation to pay the short pays or any other category of Plaintiff's claimed damages.

Plaintiff did not name as defendants the Progressive corporate entities that provided the insurance policies for 101 of the 103 Assignments it obtained. However, even assuming Plaintiff had named the appropriate corporate entities as defendants, and for those Assignments relating to policies issued by Defendant, Plaintiff has failed to produce any evidence that would create a genuine dispute of material facts as to its breach of contract claims on behalf of the Insureds or Third-Party Claimants.

### B. Bad Faith Claims

Pennsylvania statute 42 Pa. Cons. Stat. Ann. § 8371 allows a claim only for bad faith conduct relating to actions on insurance policies "toward the insured" by "the insurer." *Lockhart*, 1998 U.S. Dist. LEXIS 4046, at *4 (citing 42 Pa. Cons. Stat. Ann. § 8371). Only Plaintiff's bad faith claims on behalf of the Insureds remain in this case, and the named Defendant in this case, Progressive Casualty Insurance Company, only issued a policy to Insured

Bruce Raab. Further, assuming *arguendo,* Plaintiff named the correct entities as defendants, the Assignments do not expressly convey to Plaintiff the ability to maintain a bad faith claim against Defendant. Even disregarding these preliminary, and dispositive, issues, Plaintiff has also failed to produce sufficient evidence to maintain its bad faith claims against Defendant under Pennsylvania law.

Under Pennsylvania law, bad faith "must be proven by clear and convincing evidence and not merely insinuated." *Terletsky v. Prudential Property & Casualty Ins. Co.* 649 A.2d 680, 688 (Pa. Super. 1997) (collecting cases). This heightened standard requires the insured to provide evidence "so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendants acted in bad faith." *Bostick v. ITT Hartford Grp.,* 56 F. Supp. 2d 580, 587 (E.D. Pa. 1999) (citations omitted).

Plaintiff asserts Defendant's failure to pay the short pays and Defendant's lack of reasonable basis in denying its liability for the short pays constitute bad faith. However, the record shows Plaintiff admits the labor rates it charged were more than competitors in the geographic area and the auto policy obligates Defendant to pay prevailing competitive labor rates and costs of repair or replacement parts and equipment as reasonably determined by the insurer (ECF No. 67 at ¶¶ 23, 53, 54, 55, 56, and 57). Plaintiff also contends its disagreement regarding Defendant's adjuster's estimates constitutes bad faith, arguing Defendant caused Plaintiff to expend additional time and resources to negotiate for additional repairs and a higher rate of pay and even then there was a deficiency in Plaintiff's estimate of the cost of repairs and what Defendant paid Plaintiff (ECF No. 79 at p. 11). Plaintiff contends generally that Defendant's course of conduct presents evidence of "shoddy claims handling, lack of diligence, and haphazard investigation". *Id.*

In support of its allegations, Plaintiff relies on deposition testimony from Progressive Managed Repair Representative (i.e. adjuster) Alan Thomas (ECF No. 83-1 at pp. 11-43) and Defendant's Western Pennsylvania Property Damage Manager James Turcovski (ECF No. 83-1 at pp. 44-53). In summary, the testimony indicates there were several instances where Progressive's adjuster initially underestimated the damage to vehicles and had to provide supplemental appraisals to account for the need for increased costs for repairs and labor, and that Defendant paid the market labor rate. *Id.* Plaintiff's disagreements with Defendant's estimates and testimony indicating additional estimates were required and Defendant paid the market labor rate does not show Defendant was acting in bad faith. *See Clarke v. Liberty Mut. Ins. Co.*, No. 3:18-CV-1925, 2019 U.S. Dist. LEXIS 44549, at *9 (M.D. Pa. Mar. 19, 2019) citing *Smith v. State Farm Mut. Auto. Ins. Co.*, 506 F. App'x 133, 136 (3d Cir. 2012) ("Courts have consistently held that a dispute or discrepancy in the valuation of a claim between the insurer and the insured is not alone indicative of bad faith, nor is it sufficient by itself to state a bad faith claim."); *West v. State Farm Ins. Co.*, No. 16-3185, 2016 U.S. Dist. LEXIS 106783, at *2 (E.D. Pa. Aug. 11, 2016) ("A 'low-ball' offer alone does not suffice to support a claim for bad faith. '[B]ad faith is not present merely because an insurer makes a low but reasonable estimate of an insured's damages.'"); *Pfister v. State Farm Fire & Cas. Co.*, No. 11-799, 2011 U.S. Dist. LEXIS 81324, at *4 (W.D. Pa. July 26, 2011) (discrepancy in parties' valuation of claim "alone is not evidence of bad faith; Pennsylvania law generally does not treat as bad faith an insurer's low but reasonable estimate of an insured's losses"); *Williams v. Hartford Cas. Ins. Co.*, 83 F. Supp. 2d 567, 576 (E.D. Pa. 2000) ("negotiating by offering a figure at the low end of the settlement range does not necessarily constitute bad faith, particularly when the valuation of the injuries and damages of a claim is difficult"). Plaintiff has

failed to produce clear and convincing evidence that Defendant acted in bad faith in order to survive summary judgment, and Defendant is entitled to judgment on this claim.

### C. Unjust Enrichment

Courts "may not make a finding of unjust enrichment…where a written or express contract between parties exists." *Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa. Super. 1999), *appeal denied*, 561 Pa. 698, 751 A.2d 192 (Pa. 2000) (citation omitted). Assuming Plaintiff had sued the appropriate insurer entities, Defendant correctly identifies that there is a contract that governs the relationship between itself and the Assignors, and Plaintiff does not dispute that there is no direct contract between itself and Defendant. Where there is an enforceable contract that covers the subject matter of the pending dispute, like there is here, unjust enrichment claims must be dismissed. *Jem Accessories, Inc. v. D&H Distrib., Co.*, No. 1:17-CV-2411, 2018 WL 3584790, at *2 (M.D. Pa. July 26, 2018) ("A party may not maintain an unjust enrichment claim when the parties do not dispute the existence of a governing contract that covers the same subject matter as the pending dispute."). Plaintiff, stepping into the shoes of the Assignors, has not shown it can maintain an unjust enrichment claim against Defendant under the terms of the insurance policies at issue in this case.

However, Plaintiff appears to alternatively assert a claim for unjust enrichment on its own behalf, contending that Defendant accepted and retained a benefit by failing to compensate Plaintiff and it would be unjust to permit Defendant to retain that benefit by failing to adequately compensate Plaintiff. "The elements necessary to prove unjust enrichment are: '(1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value.'" *Mitchell*, 729 A.2d at 1203 (Pa.

15

Super. 1999) (quoting *Schenck v. K.E. David, Ltd.*, 666 A.2d 327, 328 (Pa. Super. 1995); *Meehan v. Cheltenham Township*, 189 A.2d 593, 595 (Pa. 1963) ("Where one party has been unjustly enriched at the expense of another, he is required to make restitution to the other. In order to recover, there must be both (1) an enrichment, and (2) an injustice resulting if recovery for the enrichment is denied.").

The record does not support Plaintiff's claim of unjust enrichment on its own behalf. Plaintiff has not shown that any repairs were done at Defendant's request, that Defendant has any duty to repair the vehicles according to Plaintiff's recommendation, or that repairing the vehicles according to Plaintiff's recommendation saves Defendant from expense or loss. Further, Plaintiff continued to perform repairs that resulted in the alleged short pay for years while being aware that Defendant would only pay certain repair costs and labor. Accordingly, Plaintiff's delay and administrative costs are a byproduct of its unilateral conduct and are in no way attached to any possible benefit conferred to Defendant. Plaintiff's allegation Defendant failed to fully compensate it for its repairs to the vehicles of Defendant's customers is based only its own subjective estimation of the value of its parts and labor. Plaintiff has failed to plead any facts that would show that its unilateral conduct acted to unjustly confer a benefit to Defendant or show the existence of an inequity or injustice that the Court must remedy.

V. **Conclusion**

Plaintiff has failed to adduce any evidence that would allow it to overcome summary judgment on its breach of contract, bad faith, and unjust enrichment claims. For the reasons set forth herein, the Court will GRANT Defendant's motion for summary judgment (ECF No. 65) and enter judgment in favor of Defendant.

An appropriate order will follow.

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PROFESSIONAL, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> PROGRESSIVE CASUALTY INSURANCE ) <br> COMPANY, ) <br> ) <br> Defendant. | Civil Action No. 3:17-cv-185 <br> Judge Stephanie L. Haines |

## ORDER OF COURT

AND NOW, this 20th day of September, 2021, for the reasons set forth in the accompanying Opinion, IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment (ECF No. 65) is GRANTED and summary judgment is entered in favor of Defendant on Plaintiff's claims. IT IS FURTHER ORDERED that the Clerk of Court is directed to mark this case as CLOSED.

_____
Stephanie L. Haines
United States District Judge